UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ELSAYED ELHANAFI,

               Plaintiff,

    -against-

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 06-CV-411 (FB)

*Appearances:*
*For the Plaintiff:*
PAMELA THOMAS
Fine, Olin, & Anderman, P.C.
222 Broadway, 18th Fl
New York, NY 10038

*For the Defendant:*
ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
By: STEVEN M. WARSHAWSKY, ESQ.
Assistant United States Attorney
147 Pierrepont Plaza
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

      Plaintiff Elsayed Elhanafi ("Elhanafi"), a former data-entry clerk who claims he is disabled due to pain in his dominant arm and hand, seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Because the Commissioner's decision was based on an improper application of the treating-physician rule, the matter is remanded for further proceedings.

# I.

In January 1998, Elhanafi stopped working as a data-entry clerk when he suffered an injury at work due to moving heavy boxes. On October 20, 1999, Elhanafi filed an application for DIB alleging that he could not perform his job because of constant pain in his right shoulder, arm, two fingers, right knee, neck, and back, all caused by his injury; the Commissioner denied the application on January 25, 2001. Following that denial, Elhanafi had three hearings before two ALJs (pursuant to two remands by the Appeals Council). The relevant evidence adduced at the third hearing is summarized below.

## A. Medical Evidence

### 1. *Treatment Records*

Elhanafi's injury caused a primary impairment to his upper right extremity (arm/shoulder/back). Dr. Robert Copulsky began treating Elhanafi in February of 1998, at which time he diagnosed him with cervical disk disease and right shoulder sprain. A.R. at 156. Since that time, Dr. Copulsky has rendered at least 11 reports, spanning from 1998 to 2003, which reflect a degenerative shoulder/back condition. On September 8, 1999, Dr. Copulsky reported that Elhanafi "exhibits *a 20% loss of use of the right shoulder.*" A.R. at 160 (emphasis added).

In 2000, Dr. Copulsky referred Elhanafi to Dr. Daniel Morgan for possible arthroscopic shoulder surgery. Although the surgery was never performed, Dr. Morgan opined that Elhanafi was totally disabled. A.R. at 223.

For the next several years, Dr. Copulsky reported on Elhanafi's deteriorating condition. On October 11, 2000, Dr. Copulsky reported that Elhanafi was totally disabled.

*See* A.R. at 384. On February 4, 2002, he stated:

> Elhanafi continues to have evidence of an impingement of the right shoulder and winging of the right scapula. There is crepitation on motion of the right shoulder with discomfort on motion of the right shoulder. The diagnosis remains impingement of the right shoulder, a brachial neuritis and a chronic injury of the long thoracic nerve on the right. *These injuries are permanent and represent a 40% loss of use of the right upper extremity. This is a permanent disability.*

A.R. at 455 (emphasis added). On May 14, 2003, Dr. Copulsky reported that Elhanafi suffered from the same impairments, as well as a decreased range of motion of the right shoulder and cervical spine. *See* A.R. at 415.

From February of 2001 through April of 2003, Elhanafi's was also evaluated at the Bellevue Hospital Center, where he was treated for, *inter alia*, low back pain, plexopathy, hypertention, and right shoulder pain. See A.R. 443-449. In April 2002, attendant neurologist Robert Staundinger reported that Elhanafi had no limitations in standing and walking, unspecified limitations in lifting, carrying, reaching, handling, pushing and pulling due to his shoulder impairment, and was limited to sitting for no more than four hours in an eight-hour work day. *See* A.R. at 424-25. Dr. Melenia Lewis, another physician at Bellevue, opined in July of 2003, that Elhanafi was able to lift up to 10 pounds occasionally and 5 pounds frequently, stand and walk for two hours in an eight hour and could sit without limitation, but was limited his ability to reach, push and pull. *See* A.R. at 426-429. The record reflects only these single assessments from Dr. Staudinger and Dr. Lewis.

## 2. *Consultative Examinations*

Elhanafi was examined by a number of consultative physicians who also opined on the extent of Elhanafi's right arm/shoulder/back impairment. On March 19, 1998, Dr. Robert Orlandi, who examined Elhanafi in connection with his worker's compensation claim, reported that Elhanafi had a full range of motion in his right shoulder and no disability, *see* A.R. at 269; on November 26, 2001, however, Dr. Orlandi opined that Elhanafi had a 35% loss of use of the right shoulder and upper extremity, which was a moderate permanent disability. As a result, Dr. Orlandi concluded that Elhanafi could not perform any work that requires "rigorous use of the upper extremity." *See* A.R. at 403.

In October of 1999, orthopedic surgeon Dr. Seth Paul found that Elhanafi had a 12.5% loss of use of his right arm and was capable of returning to his previous work activities as a data-entry clerk. A.R. at 239-242. Similarly, on June 14, 2000, Dr. Lawrence Miller, also an orthopedic surgeon, found that Elhanafi was capable of working on a full-time basis and resuming pre-accident level activities. A.R. at 207-210.

## 3. *Other Medical Evidence*

In addition to reviewing medical records and reports, the ALJ heard testimony from Dr. Ernest Abeles, an orthopedic medical expert. Dr. Abeles testified that the best diagnosis concerning Elhanafi's right upper extremity was dysfunction of the long thoracic nerve affecting the serratus muscle (which holds the right scapula in place) causing decreased range of motion of the right shoulder and mild carpal tunnel syndrome. Dr. Abeles also pointed out that Elhanafi was taking Naprosyn, an anti-inflammatory drug described by Dr. Abeles as a "moderate pain medication." A.R. at 606. Dr. Abeles opined

4

that, given these impairments and the record evidence, Elhanfi retained the residual functional capacity ("RFC") to perform sedentary work.[1].

In soliciting Dr. Abeles' opinion, the ALJ specifically asked him to consider Dr. Orlandi's finding that Elhanafi had a 35% loss of the use of his right upper extremity; in response, Dr. Abeles' testified that Dr. Orlandi's finding was based on strength and range of motion, and would not prevent keyboarding work at a sedentary RFC. At no point did the ALJ discuss with Dr. Abeles Dr. Copulsky's finding that Elhanafi had a 40% loss of use in his right arm.

Rounding out the medical evidence was a report on Elhanafi's RFC by non-examining medical consultants at Disability Determination Services ("DDS"). The DDS report, which is undated and unsigned, states that Elhanafi could occasionally lift and/or carry up to 20 pounds, frequently lift 25 pounds, stand and/or walk for a total of about 6 hours in an 8-hour workday, and sit for a total of 6 hours in an 8-hour workday. *See* A.R. at 325-332.

### B. Other Evidence

#### 1. *Elhanafi's Testimony*

Elhanafi testified that he suffers from excruciating and constant pain in his right shoulder, arm, and hand, his neck, and his right knee. *See* A.R. at 124. According to Elhanafi, his pain affects his ability to write, type, bend, and move his head. *See id.* Elhanafi conceded, however, that medication relieves some of his pain . *See id.* Because of his back

---

[1] RFC is defined as "the most [the claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(a).

pain, Elhanafi claimed that he could stand for only 30-45 minutes at a time, sit for only 30-45 minutes at a time, and walk only 2 blocks. *See* A.R. at 724-725. Finally, Elhanafi testified that his wife does all household chores, but that he drives her to the grocery store 2-3 times per week, and loads and unloads the groceries from the car. *See* A.R. at 652-653.

### 3. *Vocational Expert Testimony*

The ALJ also elicited testimony from a vocational expert, who stated that Elhanafi's pre-injury data-entry job is classified as sedentary, semi-skilled work, which Elhanafi's RFC enabled him to perform. *See* A.R. at 601, 655-656.

### B. ALJ's Decision

In a decision dated September 7, 2005, the ALJ found that "the medical evidence establishes that [Elhanafi] has severe impairments, including long thoracic nerve injury, right carpal tunnel syndrome, and degenerative disc disease, degenerative joint disease of the right knee, coronary artery disease, asthma and hypertension," but that "these [ ]impairments do not meet or equal the criteria of any of the impairments [considered *per se* disabling by the Commissioner's regulations]." A.R. at 21-22. The ALJ then determined that Elhanafi was not disabled "at any time from his alleged onset date of [January 20, 1988] through the present date" because he retained the residual functional capacity for "a wide range of sedentary work," including his "past relevant work as a data entry clerk." A.R. at 21.[2] The ALJ based this determination on the following findings:

---

[2]DIB requires that a claimant have coverage – also known as "insured status" – at the time the claimant becomes disabled. *See Arnone v. Bowen*, 882 F.2d 34, 35 (2d Cir. 1989) ("To be eligible for disability insurance benefits, an applicant must be 'insured for

> [Elhanafi] can lift and/or carry up to 10 pounds, he can sit for up to 6 hours during the course of an 8 hour workday. *He cannot perform any work requiring him to lift his right arm above shoulder level, he cannot reach to full extension with the right arm and he cannot do any pushing and/or pulling on arm controls.* [Elhanafi] cannot have any concentrated exposure to dust, fumes, gases, vapors, poor ventilation or extremes of temperature or humidity. He can only occasionally bend, stoop, crouch, kneel and climb ramps or stairs. He cannot climb ropes, ladders, scaffolds, he cannot crawl and he cannot perform any work with vibrating tools at unprotected heights. Also, [he] cannot drive automobile equipment or balance (20 CFR 404.1567).

A.R. at 21-22 (emphasis added).

In support of these findings, the ALJ listed much of the medical evidence, generally noting that "most examiners found that . . . [Elhanafi] still had significant range of motion of the right shoulder," A.R. at 21, and specifically weighting the opinions of Drs. Lewis, Orlandi, Paul and Miller, as well as those of the medical expert, Dr. Abeles, and the vocational expert.

By contrast, the ALJ gave "little weight" to Dr. Staudinger's opinion that Elhanafi's "ability to sit was limited to a total of 4 hours during an 8 hour workday due to [a] back problem." The ALJ also accorded "no weight to the DDC residual functional capacity . . . because it was not signed." A.R. at 21.

The ALJ also discredited Elhanafi's allegations of "severe and constant" right shoulder, arm, and hand pain. In making this finding, the ALJ relied on the medical

---

disability insurance benefits.'" (quoting 42 U.S.C. § 423(1)(A))). Elhanafi's last insured date was December 31, 2004; thus, he was required to prove that he was disabled on or before that date.

7

evidence – with particular reference to Dr. Abeles' testimony that the medication Elhanafi was taking was not strong – and Elhanafi's admitted activity level. *See* A.R. at 20 ("The claimant is also active and testified that he drives his wife to the grocery store 2-3 times a week and helps her shop."). The ALJ concluded that "[a]ll of this indicates that the claimant is not having debilitating pain if he stays within [a sedentary] residual functional capacity." *Id.*.

Despite an extensive history of treatment provided by Dr. Copulsky (spanning from 1998 to 2003), the ALJ did not identify the weight that he accorded to his opinion, nor did he specify whether he even considered any of Dr. Copulsky's findings in his analysis.

Specifically relevant here is the ALJ's failure to mention the February 4, 2002 report, in which Dr. Copulsky opined that – in addition to the many, well-established conditions affecting Elhanafi's right shoulder/arm – Elhanafi suffers from *brachial neuritis* (a condition characteristically involving extreme pain), that his injuries "*represent a 40% loss of use of the upper right extremity,*" and that "this is a permanent disability." A.R. at 415; *see also* A.R. at 455 (May 14, 2003 report). The ALJ's decision is silent on the issue of brachial neuritis, and with respect to the percentage loss of the use of Elhanfi's right arm, the decision notes only an earlier Dr. Copulsky report (from September 8, 1999), which indicates "a 20% loss" of the right arm, A.R. at 17, and an October 22, 1999 report by Dr. Paul, who found "a 12.5% loss."A.R. at 18. Also absent from the ALJ's discussion of the evidence are Dr. Copulsky's and Dr. Morgan's opinions that Elhanafi is "totally disabled."

8

A.R. at 223 (Morgan March 27, 2000 report), 384 (Copulsky's October 11, 2000 report).[3]

## II.

Elhanafi argues that the Commissioner's determination should be reversed because the ALJ's finding that Elhanfi "can perform a wide range of sedentary work" is not supported by substantial evidence for two reasons. First, he argues that the ALJ improperly weighed the medical evidence by crediting the non-examining medical expert while discounting opinions of treating physicians. Second, he argues that the ALJ improperly dismissed his pain allegations.

## III.

To determine whether an individual is entitled to DIB, the Commissioner employs a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *see also Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999). One component of this analysis is proper application of the treating-physician rule. *See id.* § 404.1527; *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

### A. Treating-Physician Rule

Under the Commissioner's regulations, opinions from treating physician are to be given "controlling weight" as to the nature and severity of the claimant's impairment, as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case

---

[3]The Court notes that in its November 29, 2001 decision the Appeals Council stated that Dr. Copulsky opined that Elhanafi was disabled in May of 2000 as well; however, the Court cannot locate this report in the record.

record." *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998) (quoting 20 C.F.R. § 404.1527(d)(2)). If the opinion of a treating physician is not accorded controlling weight by the ALJ, it must be evaluated according to a specific regulatory criteria. *See id.* § 404.1527(d)(2).[4] The ALJ must "give good reasons in [the] notice of determination or decision for [whatever] weight [he accords the] treating source's opinion." *Id.*

A different standard attaches when a treating physician opines on the kind of work-related activities that the claimant can perform (i.e., RFC), or on the ultimate question of disability. Opinions on these issues are not entitled to controlling weight or special significance, *see* SSR 96-5P, 1996 WL 374183, *4-5 (SSA) (interpreting 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii)). However, they must still be addressed in the decision. *See id.*

## B. Application

Elhanafi argues that the ALJ misapplied the treating-physician rule with respect to opinions rendered by Drs. Copulsky, Morgan, and Staudinger. Only Dr. Copulsky, however, who examined and treated Elhanafi on numerous occasions over a five-year period, is properly labeled a treating physician; with respect to Drs. Morgan and

---

[4]Those criteria, which govern the evaluation of all medical opinions, include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors [that tend to support or contradict the opinion]." *Schaal*, 134 F.3d at 503 (citing 20 C.F.R. § 404.1527(d)). Two other criteria – whether the physician has examined the claimant and whether the physician has treated the claimant – are presumed to exist for the opinion of a treating physician, but must be considered when evaluating any other medical opinion. *See* 20 C.F.R. § 404.1527(d).

Staudinger, the record does not establish relationships extending beyond one report. *See* 20 C.F.R. § 404.1527(d)(2) (suggesting that the hallmark of a treating physician is that he can provide "a detailed, longitudinal picture of [the claimant's] medical impairments"); *see also, e.g., Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999) (treating-physician rule applied to physicians who treated claimant on multiple occasions, but not to physician who issued only one medical report); *Miles v. Harris,* 645 F.2d 122, 126 (2d Cir. 1981) (citing *Selig v. Richardson,* 379 F.Supp. 594, 601 (E.D.N.Y.1974) ("Opinions of the treating physician are entitled to substantially greater weight than the impressions of a doctor who sees the claimant only once . . . .").

Moreover, even if Drs. Morgan and Staudinger were treating physicians, Dr. Morgan's opinion that Elhanafi was "totally disabled," A.R. at 223, and Dr. Staudinger's assessment that Elhanafi was capable of sitting only 4 hours in an 8-hour work day are exempt from the "controlling weight" presumption of the treating-physician rule. *See* SSR 96-5P, 1996 WL 374183, *4-5. Additionally, to the extent that Dr. Staudinger's opinion was relevant to an assessment of Elhanafi's RFC, the ALJ properly weighed it against the other medical evidence in the case; in determining that it deserved "little weight," the ALJ explained his rationale in accordance with the regulations. Therefore, the ALJ properly considered Dr. Staudinger's opinion regarding Elhanafi's RFC.

Although the ALJ was not duty-bound to accord controlling weight to the opinions of Drs. Morgan and Staudinger, he was required to do so with respect to the opinion of Dr. Copulsky. Given Dr. Copulsky's status as a treating physician, his February

11

2002 opinion that Elhanafi had lost 40% of the use of his right arm was entitled to controlling weight if it was well supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the case record. *See* 20 C.F.R. § 404.1527(d)(2); *Green-Younger*, 335 F.3d at 106. The ALJ, however, apparently rejected this opinion, instead mentioning Dr. Copulsky's earlier 1999 report and Dr. Paul's 1999 report, which reflected, respectively, a 20% and 12.5% – as opposed to 40% – loss of use. The ALJ was not entitled to disregard Dr. Copulsky's updated report in favor of the earlier one without explaining his reasons for doing so. *See Pronti v. Barnhart*, 339 F. Supp. 2d 480, 490-491 (W.D.N.Y. 2004) (ALJ not entitled to credit an earlier opinion by a treating physician over a later opinion to justify denying disability without explaining or clarfying the basis for the change in the treating physician's opinion) (citing *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000)).

By discounting Dr. Copulsky's updated opinion, without evaluating the regulatory criteria or providing "good reasons" in his decision, the ALJ violated the treating-physician rule. *See* 20 C.F.R. § 404.1527(d). Additionally, although Dr. Copulsky's conclusions as to Elhanafi's total disability are exempt from the "controlling weight" presumption of the treating-physician rule, the ALJ should have nonetheless expressly considered them in his decision. *See* SSR 96-5P, 1996 WL 374183, at *4-5.

### C. Effect on the Five-Step Process

The Commissioner's step-one finding that Elhanafi had not engaged in any substantial gainful activity since his injury was supported by substantial evidence and, therefore, does not constitute grounds for remand. However, the ALJ's improper

12

application of the treating-physician calls into question the remaining steps of the analysis, as well as the ALJ's ultimate finding that Elhanafi was not disabled. Ddepending on the weight it is to be accorded under proper application of the treating-physician rule, Dr. Copulsky's opinion may affect the list of "severe" impairments compiled at step two, as well as his step-three determination about whether any of these impairments, alone or in combination, would qualify as a *per se* disability.

Most notably, however, proper application of the treating-physician rule might affect the ALJ's step-four conclusion that Elhanafi could still perform his previous job. More specifically, a finding that Elhanafi suffers from brachial neurosis and a 40% loss of the use of his right arm may alter the ALJ's RFC assessment, including whether the ALJ should have credited Elhanafi's pain allegations in determining his RFC. *See* 20 C.F.R. § 404.1529(c)(1) (ALJ must evaluate the intensity and persistence of pain symptoms to determine how the symptoms limit the capacity to work, in light of whether the medical evidence could reasonably be expected to produce those symptoms).

In sum, because the ALJ failed to either give Dr. Copulsky's most recent opinion regarding the nature and extent of Elhanafi's impairment controlling weight or offer "good reasons" for not doing so, his decision was based on an improper application of the treating-physician rule. And since it is unclear whether proper application of the rule would lead to a different result, remand is necessary. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (remand appropriate where it was "unclear what legal standard was applied in weighing the treating physician's opinion" and "the Commissioner failed to provide

13

plaintiff with 'good reasons' for the lack of weight attributed to the opinion); *see also Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (remand is particularly appropriate where additional findings or explanation will elucidate the rationale for the ALJ's decision.). On remand, the ALJ is directed to determine, in accordance with the Commissioner's regulations, whether or not to accord Dr. Copulsky's opinions controlling weight, and to provide "good reasons" for whatever weight he decides to accord them.

## IV.

The case is remanded for further proceedings in accordance with this Memorandum and Order.

**SO ORDERED.**

/signed/
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 21, 2007